**In re Lewis P. SILVER, Debtor.**

**Bankruptcy No. 82–04024G.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Jan. 19, 1983.

Charles M. Golden, Philadelphia, Pa., for debtor, Lewis P. Silver.

Marvin Krasny, Adelman, Lavine, Krasny, Gold & Levin, Philadelphia, Pa., for Harvey W. Grossman.

Harris F. Goldich, Norristown, Pa., for Sheila Silver.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

██ The issue presented herein is whether we should grant the debtor's motion to reject, pursuant to section 365(a) of the Bankruptcy Code ("the Code"), a partnership dissolution agreement made between the debtor and his former partners. We conclude that the rejection of the agreement in question will benefit the debtor's estate by giving said debtor an unfettered earning potential with which to fund a plan of reorganization.

The facts of the case at bench are as follows:[1] Lewis P. Silver ("the debtor") and Harvey W. Grossman ("Grossman") were the two principal partners in an accounting firm known as Silver and Company. Certain disputes had arisen between

---

**1.** This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

Grossman and the debtor and these differences were resolved when the debtor, Grossman and Silver and Company entered into a partnership dissolution agreement ("the agreement") on September 18, 1981. By its terms, the aforesaid agreement provided, *inter alia,* that: (1) the debtor was to withdraw from the partnership on July 31, 1981; (2) the remaining partners would indemnify the debtor from and against all liabilities which existed at the time of dissolution; (3) the assets and profits of the firm were to be divided among the debtor and the remaining partners and the debtor's allocation was to be made by erasing his negative basis in the partnership; (4) the debtor was to receive from the remaining partners the sum of $2,000.00 per month for a period of ten (10) years; (5) the remaining partners were to establish a $30,000.00 fund for the benefit of the debtor's children; (6) the debtor agreed that, for a period of three years, he would not perform any independent accounting or similar services for any companies or individuals who were clients of the former partnership as of July 31, 1981; and (7) the parties were to dismiss, without prejudice, the litigation which was then pending among them in the Court of Common Pleas of Philadelphia County.

On August 26, 1982, the debtor filed a petition for relief under chapter 7 of the Bankruptcy Code ("the Code"). However, on August 31, 1982, the debtor filed a praecipe to convert the case to a chapter 11 case and, on September 1, 1982, an order converting the case to chapter 11 was so entered. Subsequent thereto, on September 21, 1982, the debtor filed the instant motion "to reject executory contract between the debtor and Silver and Company, Harvey W. Grossman, individually, and Harvey W. Grossman t/a Grossman and Company, and Shelia Silver."[2] (The parties to the agreement are only the debtor, Silver and Company and Harvey W. Grossman. Sheila Silver merely signed the contract, agreeing to be bound by one of its paragraphs.)

Section 365(a) of the Code permits the trustee, subject to the approval of the court, to assume or reject any executory contract or unexpired lease of the debtor. That action provides that:

(a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

11 U.S.C. § 365(a).

Under Section 1107(a) of the Code, the debtor in possession in a case under chapter 11 has the same rights, duties and functions of a trustee, including the right to assume or reject an executory contract. That subsection provides that:

(a) Subject to any limitations on a trustee under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.

11 U.S.C. § 1107(a).

Initially, we must determine whether the partnership dissolution agreement is "executory" within the meaning of section 365(a) of the Code. As was the case under section 70b of the Bankruptcy Act, no attempt has been made to define the term "executory contract." 2 Collier on Bankruptcy ¶ 365.02 at 365–12 (15th ed. 1982). Grossman argues that the agreement is not executory because the object of the agreement—the dissolution of the partnership—has been completed in full. We disagree. The weight of authority, we think, suggests that an executory contract is "a contract under which the

---

**2.** Shelia Silver is the wife of the debtor. She and the debtor separated in 1981. The Court of Common Pleas of Montgomery County has entered a support order against the debtor in favor of his wife and their children. The debtor and his wife entered into a "Memorandum of Agreement" on August 27, 1981, wherein the debtor assigned his yet-uncontracted-for right to receive the $2,000.00 per month from the remaining partners to his wife (the partnership dissolution agreement was entered into on September 18, 1981).

obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." Countryman, *Executory Contracts in Bankruptcy: Part I,* 57 Minn.L.Rev. 439, 460 (1973). Moreover, according to the legislative history, the term "executory contract" "generally includes contracts on which performance remains due *to some extent* on both sides" (emphasis added). 2 Collier on Bankruptcy ¶ 365.02 at 365–12 (15th ed. 1982).

■ In the case *sub judice,* while the partnership has been effectively dissolved, Grossman has, among other things, a continuing obligation to pay the debtor $2,000.00 per month for a period of ten (10) years and the debtor has a continuing obligation "not to perform any independent accounting or similar services for any companies or individuals who were clients of the firm as of July 31, 1981, for a period of three (3) years." Consequently, we think that the failure of either Grossman or the debtor to fulfill their respective obligations would constitute a material breach of the partnership dissolution agreement. Therefore, we conclude that the agreement is "executory" within the meaning of section 365(a).

■ We next consider the contention that the debtor is seeking relief only from the restrictive covenant and not from any other provision of the agreement. But an executory contract cannot be rejected in part and assumed in part. Hence, if true, such relief would be improper. In *In re Klaber Bros., Inc.,* 173 F.Supp. 83 (S.D.N.Y. 1959), the court held that:

> An executory contract cannot be rejected in part, and assumed in part. The

Debtor, or the trustee, is not free to retain the favorable features of the contract, and reject only the unfavorable ones. Assumption carries with it all of the burdens as well as the benefits of the contract. The contract must be rejected in its entirety, or not at all.

173 F.Supp. at 85.

Therefore, in ruling on the debtor's motion to reject, we must determine if rejection of the agreement *in its entirety* will benefit the debtor's estate.

As the United States Court of Appeals for the Third Circuit recently held in *In re Bildisco,* 682 F.2d 72 (3rd Cir.1982), "the usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test." *citing* 2 Collier on Bankruptcy ¶ 365.03 (15th ed. 1981). *See also In re Yellow Limousine Service, Inc.,* 22 B.R. 807 (Bkrtcy.E.D.Pa.1982).[3]

The debtor, a certified public accountant, contends that the restrictive covenant contained in the agreement precludes him from generating income sufficient to fund a plan of reorganization.[4] He testified that, in the year prior to the dissolution of the partnership, he was responsible for approximately $650,000.00 in gross billings from clients he brought into the firm and for whose service he was personally responsible (N.T. 10/27/82 at 7). In addition, the debtor testified that he was responsible for bringing in approximately $200,000.00 to $300,000.00 a year in new business and that this was a result of referrals from his existing clients (N.T. 10/27/82 at 9). In comparison, the debtor testified that, since going back into practice on his own, his billings have amounted to approximately $65,000.00 (N.T. 10/27/82 at 8).

---

**3.** Both Grossman and the debtor's wife urge us to apply the "onerous and burdensome" standard in ruling on the debtor's motion to reject. We are, however, bound by the standard enunciated by the Third Circuit in *In re Bildisco* cited in the text above.

**4.** Grossman argues that the agreement should not be rejected because it is the debtor's unse-

cured debts in excess of $1,000,000.00, rather than the restrictive covenant, that hinders the debtor's ability to borrow money. While the restrictive covenant may have little effect on the debtor's borrowing capacity, Grossman ignores the debtor's contention that the restrictive covenant affects his ability to earn money and thereby fund a plan of reorganization.

**530**

We are cognizant of the fact that, if we grant the debtor's motion to reject, the estate will lose the benefits of the agreement such as the distribution of assets and profits to the debtor and incur additional burdens occasioned by the re-assumption of the various partnership liabilities and the nondischargeable support obligation.[5] However, the evidence presented establishes that, in the absence of the restrictive covenant contained in the agreement, the debtor could generate approximately $650,000.00 in fees. On the other hand, no comparable evidence was adduced which would reflect that the loss of benefits to the estate and the reassumption of liabilities by the estate would outweigh the benefit of the debtor gaining an unfettered earning potential with which to fund a plan of reorganization which, in turn, will benefit all creditors.[6]

 Finally, the debtor's wife contends that the debtor lacks standing to seek rejection of the agreement because the debtor assigned his right to receive the $2,000.00 per month payments from the partnership to her. Assuming, *arguendo,* that said argument has merit, the fact remains that the debtor's obligation not to compete—the part of the agreement most detrimental to the estate—is a personal one which cannot be delegated. Therefore, since the debtor undoubtedly has standing as to the covenant not to compete and since an executory contract, as previously mentioned, can only be assumed or rejected in its entirety, we conclude that the debtor has standing to seek rejection of the agreement in question. In any event, there is no assignment of rights between the debtor and his wife in the contract sought to be rejected. The assignment referred to by the wife is contained in a separate agreement entered into between the debtor and his wife.[7]

Moreover, the parties stipulated at trial that the agreement in question intended to confer a benefit upon the debtor's wife and that the wife was a third-party beneficiary of the agreement (N.T. 10/27/82 at 2).[8] In this regard, we note that "the claim of a beneficiary is dependent upon the validity of the contract that creates it. If that contract is void, voidable, or unenforceable, his claim is likewise affected." *Corbin on Contracts* § 818 (1951). Consequently, since any executory contract to which a debtor in bankruptcy is a party is a voidable contract by virtue of section 365(a), the claim of a beneficiary arising out of said contract is necessarily dependent upon the decision, subject to court approval, of the trustee or debtor-in-possession to assume or reject the contract pursuant to section 365(a) of the Code.

Based on all the above, we will grant the debtor's motion to reject the agreement.

**5.** *See* 11 U.S.C. § 523(a)(5) and note 2 *supra.*

**6.** The debtor testified that he intends to include those obligations that would necessarily be assumed by the estate in rejecting the agreement in his plan of reorganization (N.T. 10/27/82 at 22).

**7.** *See* Exh. 2. ("Memorandum of Agreement")

**8.** *See* Grossman's Findings of Fact, ¶ 4.