**In the Matter of HERNDON EXECUTIVE CENTER, INC., Debtor.**

**Bankruptcy No. 83–872 Orl.**

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

Jan. 31, 1984.

Burton Bruggeman, Orlando, Fla., for debtor.

Christopher Skambis, Orlando, Fla., for Freedom Federal.

## ORDER ON MOTION TO DISMISS

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case commenced by a Petition for Relief filed by Herndon Executive Center, Inc. on October 24, 1983. The Petition was not accompanied by a full set of Schedules, although it was accompanied by a list of creditors. The Schedules were ultimately filed on December 12, 1983.

It appears from the record and from statement of counsel that the following facts are controlling on the matter under consideration, that is, the Motion to Dismiss the above-captioned Chapter 11 case filed by Freedom Federal Savings & Loan Association (Freedom Federal).

Herndon Executive Center, Inc. (Herndon Executive) is a Florida corporation formed March 10, 1982. Herndon Executive never had any employees in the past and has none now; it had no bank account, until recently; it had no employer's identification number. It is without substantial dispute that its primary obligations are a first and a second mortgage and several mechanics liens encumbering its sole assets, all of which represent a total secured indebtedness of $2,413,-000.

It further appears and it is without dispute that the property in question, which is a substantial office building located in Orlando, Florida, was conveyed by one Joseph M. Bruce, the previous owner of the subject property, to Herndon Executive on the very same day Herndon Executive filed its petition for relief under Chapter 11. Prior to this conveyance, the subject property was already involved in a foreclosure action filed in the state court by the holder of the first mortgage, Freedom Federal, and on August 23, 1983, the state court entered a final judgment of foreclosure. The foreclosure sale was originally scheduled for September 22, 1983, but it was postponed by agreement and rescheduled for October 24,

1983, the very day the petition for relief was filed. Because of the operation of the automatic stay imposed by § 362 of the Bankruptcy Code, the sale was never held. It further appears that the subject property is partially rented, but does not generate sufficient cash flow to service the secured indebtedness at this time, and it actually has, as it had in the past, a negative cash flow.

Based on the following, it is the contention of Freedom Federal that the petition was filed in bad faith and, therefore, this Court should dismiss the case. In the alternative, Freedom Federal urges that the case should be dismissed pursuant to § 1112(b) of the Bankruptcy Code on the grounds that there is an unreasonable delay which is prejudicial to creditors and that Herndon Executive has no realistic expectation to effectuate a reorganization; or to put it differently, there is no possibility of reorganization because there is no longer a mortgage which is in default which can be reinstated. Rather, there could only be satisfaction by payment in full in the amount of the final judgment and the accrued interest and costs.

In support of the bad faith argument, Freedom Federal cites the cases of *In re Max Mogul*, 17 B.R. 680 (Bkrtcy.M.D.Fla. 1982) and *In re Lotus Investments*, 16 B.R. 592 (Bkrtcy.S.D.Fla.1981), contending that Herndon Executive is a new entity specially created for the purpose of seeking relief in Chapter 11; that it has no substantial unsecured creditors with the exception of attorneys; that it has a negative cash flow which is unable to service the debt; and that it is clear that the sole purpose of filing this Chapter 11 through this newly created entity is to forestall the loss of the property with the expectation that it may ultimately be able to salvage whatever equity there is in the subject property based on improved market conditions.

In further support of this proposition, counsel for the Debtor also cites *In re Victory Construction Co., Inc.*, 9 B.R. 549 (Bkrtcy.C.D.Cal.1981); *In re Zed, Inc.*, 20 B.R. 462 (Bkrtcy.N.D.Cal.1982); *In re FJD,*

*Inc.*, 24 B.R. 138 (Bkrtcy.1982); and *In re Alison Corp.*, 9 B.R. 827 (Bkrtcy.S.D.Cal. 1981).

The concept of "good faith" of a debtor or a lack of same is not new. It was always part, either expressly or by implication of all relief chapter proceedings even under the Act of 1898. The term "good faith" has acquired over the years two distinct meanings. One relates to a debtor's right to file and to maintain a case, and in turn, to enjoy the protection of the Bankruptcy Court. The other relates to the debtor's right to obtain the confirmation of a plan of reorganization or arrangement under the various relief chapters of the Bankruptcy Act of 1898. For instance, §§ 74, 77, 77(b), Chapter IX and Chapter X each contained an express requirement that the debtor must show good faith before the petition for relief was approved by the Court. [See, §§ 74(a), 77(a), 77B(a), 80(a) and §§ 141–146 of the Act of 1898].

On the other hand, the pre-Code relief chapters, §§ 75, Chapters XI, XII, XIII did not contain a provision requiring an initial showing of "good faith" as a condition precedent for filing and maintaining a case under these Chapters. Nevertheless, the courts were not hesitant to use the concept of good faith as an implied requirement for filing and maintaining a case under these Chapters in spite of an absence of a specific requirement to show good faith. Most importantly, the courts used this as an effective means to prevent abusive filings or filings used by debtors for improper purposes, *Rider*, 96 Fed. 808 (N.D.N.Y.1899); *Frear*, 120 Fed. 978 (N.D.N.Y.1903). For instance, when it appeared that the economic prospects of the debtor were so bleak that there was no way to accomplish a fair compromise or extension of debts, the courts were not hesitant to hold that the purpose of the Debtor to seek relief in the Bankruptcy Court was merely to delay and to harass a creditor, *Victory Construction, supra* at 555. In such a situation, courts held that the filing was an abuse of the legislative intent, therefore, it evinced a lack of "good faith" which justified a dis-

missal of the case. *Goodman v. Michael,* 280 F.2d 106 (1st Cir.1960); *REA Holding Corp. v. Manning,* 558 F.2d 1127 (2d Cir. 1977).

■ The Bankruptcy Code fused the former Chapter X, XI and XII into one single unitary relief chapter, Chapter 11. This new consolidated relief Chapter does not contain an express requirement of showing good faith as a condition precedent for filing and maintaining a case under this Chapter. There is hardly any doubt, however, that this omission by Congress does not mean that the implicit requirement of establishing good faith established by long line of judicial decisions under the pre-Code law is still not a viable concept. Indeed, it would be anomolous to conclude that Congress in consolidating these Chapters into the new combined relief chapter intended to discard the judicially created safeguard against abusive filings and intended to remove all protective measures against misuse of the provisions of the Code designed to adjust fairly the conflicting interest of creditors and debtors alike. Thus, there is hardly any doubt that the good faith is still an implied prerequisite to filing and maintaining a case under Chapter 11 of the Code. *In re Victory Construction Co., Inc., supra.*

The issue of a debtor's good faith in filing or commencing a case was frequently raised, of course, at the outset of the proceeding by entities whose financial interests were threatened by the delay and expense associated with processing a case through the Bankruptcy Court. It is true, however, that the hasty decision at the outset concerning the good faith or lack of the same of a debtor might not be appropriate in certain situations and might be premature. *See, Sumida v. Yumen,* 409 F.2d 654 (9th Cir.1969), (a pre-Code case.) Most of the judicial current flows in the same direction, that is to require a showing of good faith as a condition of a right to file and process the proceeding, *Victory Construction, supra* at 557.

■ Concededly, there is nothing in § 1112(b) which requires or even expressly authorizes a dismissal of a Chapter 11 case for lack of good faith. Considering the historical background of the concept as discussed earlier, there is no question that evidence of an intent to abuse or misuse the reorganization process is sufficient "cause" to warrant a dismissal. *In re 299 Jack Hemp Associates,* 20 B.R. 412 (S.D.N.Y. Bkrtcy.1982); *In re Spenard Ventures, Inc.,* 18 B.R. 164 (Bkrtcy.D.Alaska 1982). Thus, institution of a Chapter 11 case for the sole purpose of invoking the automatic stay without the intent or the ability to reorganize was held to be a bad faith filing which warranted a dismissal. *In re Thirtieth Place, Inc.,* 30 B.R. 503 (Bkrtcy. 9th Cir. 1983). Equally, a transfer of one's assets to a non-debtor on the eve of the Chapter 11 filing has been considered to be evidence of bad faith filing and requires careful scrutiny. *Matter of Levinsky,* 23 B.R. 210 (Bkrtcy.E.D.N.Y.1982); *In re Beach Club,* 22 B.R. 597 (Bkrtcy.N.D.Cal.1982). While no single factor is determinative of the issue, when the question of lack of good faith is raised, the Court must examine all facts and circumstances of the case under consideration. Absence of any bona fide unsecured creditors was found to be an attempt to abuse the jurisdiction of the Court in *In re Groundhog Mountain Corp.,* 1 BCD 923 (Bkrtcy.S.D.N.Y.1975), and when the entire secured debt became due and payable and there was no more an opportunity to cure arrearages, the maintenance of a Chapter 11 case was deemed pointless and no longer warranted. *In re Dutch Flat Investment,* 6 B.R. 470 (Bkrtcy.N.D.Cal. 1980).

■ In the case under consideration, the final judgment of foreclosure was entered on August 23, 1983. The foreclosure sale of the subject property was scheduled to be held on September 22, 1983. By agreement, the sale was postponed and was to be rescheduled but before it could be held the property was conveyed by its previous owner J.M. Bruce to this Debtor which is a previously formed corporation controlled by Mr. Bruce. The conveyance was admittedly a paper transfer with no consideration.

The Chapter 11 petition was filed on the very day this Debtor acquired the subject property. There is no question that the property does not produce a sufficient income for debt service and the likelihood that this Debtor will ever be able to pay in full the encumbrances is remote, if not non-existent.

Considering the totality of the undisputed facts of this case, there is hardly any doubt that this Debtor invoked the jurisdiction of this Court for the single purpose to forestall an imminent loss of its sole asset, albeit, a newly acquired one and to frustrate secured creditors in their efforts to enforce their legitimate rights against the subject property. This was not a part of the congressional design when Chapter 11 was enacted and clearly, this Debtor's action does not represent a good faith attempt to effect a reorganization as contemplated by the Code. In light of the foregoing, it is unnecessary to consider the alternative ground for dismissal based on § 1112(b)(2) urged by Freedom Federal, that is, Herndon Executive's inability to effectuate a reorganization.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion to Dismiss filed by Freedom Federal Savings and Loan be, and the same hereby is, granted and the Chapter 11 case be, and the same hereby is, dismissed.