In re Brian SETZER, Debtor.

Brian SETZER, Plaintiff,

v.

HOT PRODUCTIONS, INC., Defendant.

Bankruptcy No. 884–41614–20.
Adv. No. 884–0287–20.

United States Bankruptcy Court,
E.D. New York,
at Westbury.

March 21, 1985.

Marc Stuart Goldberg, Nachamie, Kirschner, Levine, Spizz & Goldberg, P.C., New York City, Sharlyn B. Cohen, Barsky & Cohen, Ltd., Philadelphia, Pa., for debtor.

Michael Macco, Trustee.

Mitchell Greene, Sherman, Citron & Karasik, P.C., New York City, Lynn J. Benswanger, Alan L. Spielman, Ltd., Philadelphia, Pa., for Hot Productions.

Edward S. Weisfelner, Bishop, Liberman & Cook, New York City, for Zomba Music.

## DECISION AND ORDER

ROBERT JOHN HALL, Bankruptcy Judge.

Before the court is the motion of Hot Productions, Inc. ("Hot Productions"), a creditor of the debtor, Brian Setzer, and a defendant in the captioned adversary proceeding. Hot Productions moves for dismissal of the debtor's chapter 13 case, or in the alternative, relief from the automatic stay and dismissal of the instant adversary proceeding. Hot Productions asserts that the debtor's petition was filed in bad faith as a litigation tactic and that the debtor is not a "financially troubled" debtor in need of reorganization.

The motion was heard on December 13, 1984, at which time the court heard argument of counsel and reserved decision. Subsequently, the parties submitted memoranda. The essential facts are undisputed, but the factual inferences and legal conclusions to be derived therefrom are vigorously contested.

## THE FACTS

Brian Setzer is a successful contemporary music composer and performer. During the past several years, however, several parties have asserted significant claims against the debtor. These claims represent the only unsecured debt owed by the debtor, but together they total over $4 million.

In separate court actions, one in Philadelphia and one in London, England, two claimants are each alleging to be a former manager of the debtor's career affairs, entitled to twenty percent of the debtor's gross earnings. In addition, liability has

been established on a copyright infringement claim against the debtor, with no hearing having been set to determine the damages owed by the debtor. A cross claim in the copyright infringement action has been asserted against the debtor by E.M.I. Productions, Inc. All of the unsecured claims asserted against the debtor have been listed by the debtor as disputed and unliquidated.

The only secured debt owed by the debtor is a $250,000 note which is current and secured by a mortgage on the debtor's real property. Finally the debtor alleges to be a party to several executory contracts, four of which are currently subject to proceedings by the debtor seeking authorization to reject.

The debtor filed a plan in which he proposed to remain current on his mortgage obligation. He proposed to pay unsecured creditors $300 monthly for thirty-six months, and on the thirty-sixth month to pay unsecured creditors an amount that would assure that each unsecured creditor would receive at least as much as they would have upon a liquidation occurring on the confirmation date.

The instant adversary proceeding finds its roots in an agreement entered into between Hot Productions and the debtor[1] on July 4, 1979 (the "Agreement"). The Agreement provided that Hot Productions was to serve as the debtor's manager in the entertainment industry, in exchange for which the debtor would pay Hot Productions a sum of money equal to twenty percent of the debtor's gross earnings. The initial term of the Agreement was a three-year period beginning July 4, 1979, and ending July 4, 1982. By the terms of the Agreement, Hot Productions could extend the term of the contract for two additional two-year periods, provided, however, that Hot Productions had by then obtained for the debtor a recording contract.

The Agreement set forth the parties' rights and responsibilities. It provided that Hot Productions could render services to any other entities, could assign and sell the Agreement without notice, and could designate other persons to perform or assist in performing its responsibilities (but that payment to such persons would be the responsibility of Hot Productions). The debtor was required by the Agreement to obtain Hot Production's prior approval before entering into any contracts relating to the rendition of the debtor's services and the use of his artistic, musical and literary materials.

On July 22, 1982, Hot Productions filed a complaint against the debtor in the United States District Court for the Eastern District of Pennsylvania (the "Philadelphia Action"), seeking damages for the debtor's breach and repudiation of the Agreement alleged to have occurred in or about November 1979. Hot Productions contends that the pretrial motion practice in the Philadelphia Action has been long and stormy, with the district judge on one occasion imposing sanctions on defense counsel.

On July 31, 1984, the debtor filed a motion with the district court seeking leave to file his second amended answer and counterclaim. On August 24, 1984, the Hon. Norma L. Shapiro denied the debtor's motion, ruling from the bench as follows:

Now, this case will be tried on the joint final pretrial order filed May 14, 1984 as it may be supplemented by discovery taken subsequent to that time. That would be the discovery of the expert and the discovery of Mr. Fishkin. That being the case, there is no need to file a second amended answer and counterclaim. To the extent that the matters are raised in the joint final pretrial order they are contemplated as pretrial matters in the case and they will be conformed. To the extent they are not contemplated in the final pretrial order, I will not permit it at this time. A final pretrial order has been submitted and the case was listed for trial and it's too late to amend the coun-

---

1. The agreement was between Hot Productions and musicians Brian Setzer, his brother Gary Setzer, Ken Kinnally, and Bob Beecher individ- ually and collectively. Collectively, the musicians were known as "The Bloodless Pharaohs."

terclaim or to add anything that's not in the final pretrial order.

By written order dated September 14, 1984 Judge Shapiro formally denied the motion:

Defendant's motion for leave to file an amended answer and counterclaim is DE-NIED. The case will be tried based upon the joint final pretrial order previously filed, and the supplement allowed by the court herewith. To the extent the amended pleading is consistent therewith, it is unnecessary; to the extent it expands the issues stated in the final pretrial order it is untimely.

Trial before Judge Shapiro was scheduled to begin on October 29, 1984. The debtor filed his petition on October 9, 1984, automatically staying the Philadelphia Action. On October 12, 1984, the debtor commenced the instant adversary proceeding seeking, *inter alia:* (1) an order declaring that the Agreement be deemed unenforceable against the debtor; (2) an order authorizing the rejection of the Agreement under 11 U.S.C. § 365 should it be found enforceable against the debtor; and (3) an order limiting under 11 U.S.C. § 502(b)(8) damages arising from the rejection should the Agreement be found to be an employment agreement. In addition to allegations regarding the nullity of the Agreement at its inception, the debtor's adversary complaint alleged that the debtor properly terminated the Agreement and that the defendant acquiesced in the termination.

Paragraph 31 of the adversary complaint contains several allegations not contained in the parties' final pretrial order in the Philadelphia Action, including allegations of a "fraudulent representation" made by Hot Productions in connection with the signing of the Agreement and a refusal by Hot Productions to obtain independent counsel for the debtor. In addition, the complaint raised several new issues, including the issues of whether Hot Productions' performance under the Agreement violated New York law and whether the parties mutually rescinded the Agreement. Thus, as a practical matter, the debtor's chapter 13 filing and subsequent initiation of the instant adversary proceeding effectively allowed the debtor to circumvent Judge Shapiro's order denying further filing of amended pleadings.

## DISCUSSION

11 U.S.C. § 362(d)(1) provides that the court *shall* grant relief from the automatic stay "for cause." Similarly, 11 U.S.C. § 1307(c) provides that the court *may* dismiss a case "for cause." To establish cause in both contexts, creditors will often assert that the debtor filed his petition in bad faith. *See California Mortgage Service v. Yukon Enterprises, Inc.,* 39 B.R. 919, 11 B.C.D. 1295, 1296 (Bankr.C.D.Cal. 1984) (*In re Yukon Enterprises, Inc.*). In view of the possibility of the filing of a new bankruptcy petition after a dismissal of a case, the lifting of the stay is often a more prudent course for creditors. *Id.*

Bad faith has frequently been held to provide sufficient cause to warrant both types of relief. *See, e.g., id.,* 39 B.R. 919, 11 B.C.D. at 1297 (bad faith requires lifting of the automatic stay); *In re Victory Construction Co., Inc.,* 9 B.R. 549, 558–60 (lack of good faith in filing petition is cause to lift stay) (see appendix at 9 B.R. 565–70 for numerous citations of cases dealing with the issue of good faith); *In re Wally Findlay Galleries, Inc.,* 36 B.R. 849, 850–51 (Bankr.S.D.N.Y.1984) (filing of petition as litigation tactic establishes cause for dismissal); *In re Herndon Executive Center, Inc.,* 36 B.R. 803, 805–06 (Bankr.M.D.Fla. 1984) (evidence of intent to abuse or misuse reorganization process is sufficient cause to warrant dismissal); *In re Spenard Ventures, Inc.,* 18 B.R. 164, 166 (Bankr.D.Alaska 1982) (most courts facing issue hold bad faith in filing constitutes cause for dismissal); *see also Albany Partners, Ltd. v. Westbrook,* 749 F.2d 670, 12 B.C.D. 787, 790 (11th Cir.1984) (*In re Albany Partners, Ltd.*).

■ Good faith is not defined by the Bankruptcy Code, but has been repeatedly held to require a showing of an honest intention. *See Johnson v. Vanguard Holding Corp.,* 708 F.2d 865, 868 (2d Cir.

1983) (*In re Johnson* ). Its broad application to various factual situations requires inquiries into any abuses of the provisions, purpose or spirit of the bankruptcy law and into whether the debtor honestly requires the liberal protection of the Code. *See In re Vlahakis,* 11 B.R. 751, 753 (Bankr.M.D. Ga.1981). Courts have held many factors to be material to the broad principle of good faith, and have recognized that the determination can only be made on an *ad hoc* basis. *See, e.g. In re Chase,* 28 B.R. 814, 817–18, 10 B.C.D. 488, 490–91 (Bankr. D.Md.1983).

■ Before delving into the circumstances of the instant case relevant to the good faith inquiry, it is important to establish on whose shoulders the burdens of production and persuasion rest, since neither party has chosen to present any evidence. The Bankruptcy Code expressly provides that the party opposing relief from the automatic stay, *i.e.* the debtor herein, has the burden of proof on all issues except on the issue of the debtor's equity in property. 11 U.S.C. § 362(g). The burden of production; *i.e.,* raising a genuine issue of cause, however, is upon the party requesting relief. *In re Curtis,* 40 B.R. 795, 802, 11 B.C.D. 1256, 1260 (Bankr.D.Utah 1984). This proposition is the logical result of the premise that the debtor should not have to demonstrate the nonexistence of every conceivable cause or answer a naked assertion of the existence of a particular cause.

While the Code expressly allocates the burden of proof in motions to vacate the stay, it is silent with regard to the burden of proof in dismissal motions. Nevertheless, the courts have long held that once the debtor's good faith has been put into question, the debtor bears the burden of proving that the filing was made in good faith. *Marine Harbor Properties, Inc. v. Manufacturer's Trust Co.,* 317 U.S. 78, 85, 63 S.Ct. 93, 97, 87 L.Ed. 64 (1942); *In re Holi-Penn, Inc.,* 535 F.2d 841, 844 (3d Cir. 1976); *Furness v. Lilienfield,* 35 B.R. 1006, 1011 (D.Md.1983); *Herndon Executive Center,* 36 B.R. at 805–06; *In re Spenard Ventures, Inc.,* 18 B.R. 164, 166, 8

B.C.D. 1032, 1033–34, 6 C.B.C.2d 156, 159 (Bankr.D.Ala.1982); *In re Delta Motor Hotel,* 10 B.R. 585, 604 (Bankr.N.D.N.Y.1981); *Polkin, Inc. v. Lotus Investments, Inc.,* 16 B.R. 592, 595 (Bankr.S.D.Fla.1981).

■ The factors in the good faith inquiry that are relevant to the circumstances at bar must be examined in light of the precepts set forth above regarding the burdens of production and proof. Hot Productions argues that the debtor filed his chapter 13 petition as a litigating tactic in order to circumvent Judge Shapiro's order in the Philadelphia Action. If the movant's assertion on this point is correct, it would certainly warrant a ruling that the debtor's filing was in bad faith. Such a motivation is certainly not consistent with an honest intention on the debtor's part to reorganize his financial affairs. *See In re Wally Findlay Galleries, Inc.,* 36 B.R. 849, 851 (Bankr.S.D.N.Y.1984) (use of bankruptcy forum to relitigate rather than reorganize is impermissible); *In re Ripples of Clearview, Inc.,* 26 B.R. 453, 455 (Bankr.E.D.N.Y.1983) (filing to circumvent state court eviction demonstrates bad faith). As set forth in the facts above, the debtor's filing did indeed have the effect of permitting the debtor to avoid Judge Shapiro's unfavorable ruling. By essentially causing the litigation to be recommenced in this forum, the debtor was able to make allegations and present issues forever precluded in the Philadelphia Action as untimely. From this favorable effect, one can draw an inference, albeit not conclusive, that the effect constituted the motivation for the debtor's filing. In a slightly different context one bankruptcy judge has artfully described the process as follows:

Much of the case law on good faith draws heavily upon the time-honored method of analyzing and establishing a nexus between cause and effect. Long a *modus habilis* not only in bankruptcy but in criminal and tort law and in virtually any legal inquiry where intent is an issue, this sort of *a posteriori* inquiry permits courts to work backward from effect to cause—to reason, that is, that if

the probable effect of a reorganization plan is to treat unfairly of creditors, then the probable cause of the filing was bad faith. The judicial exercise of discovering antecedent intent through a study of subsequent conduct is not unknown to this Court.

*In re Khan,* 34 B.R. 574, 575 (Bankr.W.D. Ky.1983).

The litigation advantage gained by the debtor certainly raises a genuine question as to the debtor's good faith in filing his chapter 13 petition. Moreover, the movant's position is bolstered by the proximity of the debtor's filing to Judge Shapiro's order and the scheduled commencement date of the Philadelphia Action. Such timing has been held to be a factor demonstrating the debtor's bad faith. *See, e.g., Wally Findlay Galleries,* 36 B.R. at 851; *Ripples of Clearview,* 26 B.R. at 455; *In re Herndon Executive Center, Inc.,* 36 B.R. 803, 806 (Bankr.M.D.Fla.1984) (transfer of assets *on eve of filing* held to be a factor) (citing *In re Levinsky,* 23 B.R. 210, 9 B.C.D. 791 (Bankr.E.D.N.Y.1982); *In re Beach Club,* 22 B.R. 597 (Bankr.N.D.Cal. 1982)).

▪ In addition to the litigation advantage proximately resulting from the debtor's filing, the debtor's good faith is placed into question by the particular and unusual status of his debts. As mentioned above, the debtor is current on his only undisputed debt, that being his mortgage obligation. The debtor disputes, however, the existence of any legitimate unsecured debt. This absence of any bona fide unsecured creditors is a factor in determining whether the debtor is attempting to abuse the jurisdiction of the court. *In re Herndon Executive Center, Inc.,* 36 B.R. 803, 806 (Bankr. M.D.Fla.1984) (citing *In re Groundhog Mountain Corp.,* 1 B.C.D. 923 (Bankr.S.D. N.Y.1975)); *North Central Development Co. v. Landmark Capital Co.,* 27 B.R. 273, 282, 10 B.C.D. 110, 116 (Bankr.D.Ariz. 1983). It is clear that a debtor in bankruptcy must at least owe debts. *In re Coastal Cable T.V., Inc.,* 709 F.2d 762, 764 (1st

Cir.1983); 2 *Collier on Bankruptcy,* ¶ 109.-02 at 109–12 (15th ed. 1985).

The debtor's dispute as to the existence of any debt serves to strengthen the inference that the debtor filed to gain a litigation advantage or to realize upon some other improper motive, such as to utilize favorable provisions of the bankruptcy code without a bona fide intent to reorganize his debt structure. The debtor has already experienced the generous protection afforded by the automatic stay and has instituted proceedings to escape unfavorable executory contracts.

▪ In addition to the proximity of the filing to the commencement of the Philadelphia Action, the litigation advantage, and the absence of any established debt, Hot Productions raises one last factor calling into question the debtor's good faith. This last factor bears directly upon the debtor's intent to reorganize his debt structure. Although the debtor disputes the existence of any debt, he has nevertheless proposed a plan, as required by 11 U.S.C. § 1321 ("The debtor shall file a plan."). His plan, however, essentially provides for the repayment of a relatively nominal sum to all claimants, with a larger lump sum payment to be made at the end of three years, if required. The "if required" proviso is obviously intended to cover the hopeful possibility that some or all creditors will not file claims or successfully defend objections thereto. Paragraph 1. of the debtor's plan contemplates that such a sum will be large enough to:

> assure that each allowed unsecured claim receives a distribution under the plan that is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under Chapter 7 of this title on the date this plan is confirmed.

This unique provision is ostensibly designed to satisfy the requirement of 11 U.S.C. § 1325(a)(4), which requires property to be distributed under the plan to be not less than such an amount. Paragraph 1. of the debtor's plan is taken largely verbatim from said section. The court,

however, could not confirm a plan which merely echoes that it will meet a requirement of the Code. Section 1325(a)(4) requires the court to *determine* the *value* of property to be distributed under a chapter 13 plan. The court could not make such a value determination given the debtor's provision, and therefore could not confirm the debtor's plan.

■ Additional problems are readily apparent with the debtor's proposed plan which indicate that the debtor is not genuinely endeavoring to reorganize his financial affairs. For instance, section 1325(a)(6) requires that the court determine whether the debtor will be able to make all plan payments (the "feasibility test"). Potentially, if claims are liquidated in an amount exceeding the value of the debtor's assets, the debtor would be required to provide for the repayment of more than $500,000.00 over the life of the plan. *See* 11 U.S.C. § 1325(a)(4) and (b)(3). With the $426.75 amount listed in the debtor's petition as the amount of future monthly income over future monthly expenses, meeting the terms of the plan which would be required is clearly an impossible task.

■ The debtor's unusual proposed plan, and its failure to provide definitive, assessable, and practical guidelines for a present reorganization is evidence of the debtor's attempt to manipulate the bankruptcy law to his advantage rather than attempting honestly to repay his debts. *In re Chase,* 28 B.R. 814, 817 (Bankr.D.Md.1983). Until some of the debtor's disputed debts are resolved against him, he will not be able to present a plan which is confirmable. *See In re Wally Findlay Galleries, Inc.,* 36 B.R. at 849, 851 (Bankr.S.D.N.Y.1984). In sum, Hot Productions has placed the debtor's good faith in serious question, particularly with respect to the Philadelphia litigation, the absence of genuine unsecured debt, and the proposal of a problematic and unconfirmable plan.

The debtor offered no evidence to counter the strong inferences of bad faith established by the movant. Instead, the debtor argued that the large amount of disputed unsecured debt, if resolved against the debtor and liquidated in the amounts claimed, would devastate the debtor financially. This "need" for the protection of the bankruptcy court, the debtor contends, demonstrates that he is in genuine need of its protection. The debtor asserts that the bankruptcy case was filed not only to protect the debtor from this disputed debt, but in addition, to reject several burdensome executory contracts, a legitimate utilization of the Bankruptcy Code.

The debtor's argument that he is in need of the bankruptcy court's protection is a feeble attempt to prove that his chapter 13 petition was filed with the honest intention to reorganize. The debtor relied upon the recent bankruptcy court decision in *In re Johns-Manville Corp.,* 36 B.R. 727 (Bankr. S.D.N.Y.1984), for the proposition that the pending claims against the debtor can serve as the prerequisite debt demonstrating the debtor's genuine need for the protection of the bankruptcy court. This argument, however, does not squarely address the inference in the instant case that the debtor filed in order to gain a litigation advantage in the Philadelphia Action. More importantly, the *Manville* court made a finding that the debtor in its case was in "pressing need" of reorganization. 36 B.R. at 738. Manville was found to face a massive amount of debt based upon an enormous number of asbestos-related law suits arising in many forums. *Id.* at 739. In addition, the court noted that the filing triggered the acceleration of over $275 million in unsecured public and institutional debt. *Id.* at 740. Although it is not expressly stated in the opinion whether Manville disputes such debt, the bankruptcy court expressed the obvious reality that the debt in that case was not "hypothetical". *Id.* at 739. In the case at bar, it is certainly possible that if the debtor's case were dismissed, the debtor might never face the substantial liability which he urges signifies his good faith. Furthermore, the debtor, unlike Manville, is not faced with a significant number of law suits arising in

many forums. Simply put, the few claims against the instant debtor are indeed hypothetical, all of them being labelled disputed and unliquidated, indicating that the debtor is not in *pressing* need of reorganization.

 In order not to be misunderstood, the court clarifies that it holds that the debtor's primary argument herein; *i.e.*, that he faces the *potential* of financial devastation, is insufficient to overcome the inferences of bad faith established by the movant. The court does not hold that the absence of liquidated or undisputed debt irrebuttably demonstrates ´ bad faith: It should be noted that the bad faith inquiry is one covering many factors and their interaction. *See North Central Development Co. v. Landmark Capital Co.*, 27 B.R. 273, 280–281 (Bankr.D.Ariz.1983) (*In re Landmark Capital Co.*) (eve-of-foreclosure filing is not absolute proof of bad faith, but only a factor the court must consider).

The debtor further argues that his good faith is demonstrated by his desire to utilize the bankruptcy provisions permitting rejection of executory contracts. Again, the debtor's argument nevertheless falls far short of carrying the debtor's burden of proof and overcoming the inferences of bad faith. In any event, the basis for the debtor's position; *i.e.*, that he is entitled to utilize the executory contract provisions of the Code, is incorrect.

 First, the rejection of one of the executory contracts will be moot if the debtor prevails in the Philadelphia Action.[2] More importantly, however, absent established unsecured debt totalling more than the value of the debtor's assets, the court could not authorize the debtor to reject the contracts. Before a court can authorize such rejection, the debtor must show that the unsecured creditors will benefit from the rejection. *See In re Meehan*, 46 B.R. 96, 12 B.C.D. 799, 802–03 (Bankr.E.D.N.Y. 1985) (citing *In re Minges*, 602 F.2d 38 (2d Cir.1979) and *In re Huang*, 23 B.R. 798 (Bankr. 9th Cir.1982)). Unable to establish the existence of unsecured creditors, the debtor will likewise be unable to demonstrate that the rejection will inure to creditors' benefit rather than to that of only the debtor. Indeed, the rejection will likely lead to the filing of additional claims to the detriment of any unsecured creditors. If the court were not to dismiss the debtor's case, at best it could only adjourn the debtor's several proceedings requesting authorization to reject executory contracts, pending the resolution of the disputed claims. Without any demonstrated need for the reorganization tools of the Bankruptcy Code, the debtor has offered no rebuttal to the "cause" established by the movant.

The debtor before the court is not in pressing need for chapter 13 relief: he is facing suit in few forums; he disputes all claims against him; he has not had a judgment of damages awarded against him; he is not in threat of losing his home; and he can only offer creditors a meaningful plan and utilize the executory contract provisions of the Code after a claim has been resolved against him.

 If the inferences of bad faith involved herein related solely to the movant's claim, the court might consider only granting the movant relief from the stay.[3] The inferences, however, regarding the absence

---

2. In addition, as noted in the movant's brief, the executory nature of the management agreement between it and the debtor is subject to serious doubt. Both parties in the Philadelphia Action maintain that the agreement had been terminated when breached by the other party over five years ago.

3. Hot Productions' request for relief from the stay is supported on grounds other than the debtor's bad faith filing. In the interest of brevity, the court will not include a detailed analysis of these other grounds. Suffice it to state that allowing the Philadelphia Action to continue in view of Judge Shapiro's intimate familiarity and the trial's immediate pendency, would have no foreseeable detrimental effect upon the debtor's efforts to reorganize. Neither can it be asserted, where the foreign proceeding has reached the point of trial and where no other claims have yet been liquidated, that lifting the stay would prejudice other creditors. *See In re Curtis*, 40 B.R. 795, 11 B.C.D. 1256, 1258–59 (Bankr. D.Utah 1984).

of the debtor's bona fide intent to reorganize relate to the debtor's entire creditor body, thus compelling the court to dismiss this entire chapter 13 case.

 Without a genuine need present at this time for the rehabilitative provisions of the Code, and in view of the unrebutted inferences of bad faith established by the movant, the court hereby dismisses the chapter 13 case of Brian Setzer.

So Ordered.