**In re NOCO, INC., d/b/a Pinch a Penny, Paradise Pools & Spas, Debtor(s).**

**Bankruptcy Nos. 86–07231, 86–07230.**

United States Bankruptcy Court,
N.D. Florida,
Tallahassee Division.

July 8, 1987.

---

Mark Freund, Tallahassee, Fla., for Pinch a Penny.

Timothy J. Warfel, Tallahassee, Fla., for debtor.

## MEMORANDUM OPINION
## AND ORDER

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

THIS MATTER came on to be heard upon the motion of creditors Pinch a Penny, Inc., (Pinch a Penny) and Sun Wholesale Supply, Inc. (Sun) to dismiss the two separate Chapter 11 petitions of Neil and Carol Ottavi, jointly, (Ottavis), and Noco, Inc. (Noco), a franchise operated by the Ottavis individually.

The Court, having heard the testimony and examined the evidence presented, having observed the candor and demeanor of witnesses, having considered the arguments of counsel and memoranda of law, and being otherwise fully advised in the premises, does hereby make the following findings of fact and conclusions of law:

Pinch a Penny and Sun are wholly owned operating divisions of Frederick Thomas Industries, Inc. of Clearwater, Florida. In 1981, the Ottavis entered into a franchise agreement with Pinch a Penny d/b/a Sun for the purchase of the franchise, and operation of the retail pool and spa supply and accessory business. The Ottavis then incorporated Noco which operated the franchise. Noco sells pool and spa supplies, toys, chemicals, equipment and patio furni-

ture. The Ottavis are the sole officers and shareholders, and primary employees of Noco. They own the real property upon which the business is located as well as the franchise itself, all automobiles, radios, trucks and tractor used in the business. Noco owns the office equipment and inventory and leases the premises from the Ottavis. Sun supplies the inventory and provides advertising, group insurance and other services for the business.

On April 1, 1985, the Ottavis executed a promissory note to Sun for approximately $80,000. This note was assigned by Sun to Pinch a Penny which thereafter secured the note by a mortgage on the business premises from the Ottavis, recorded in August of 1986.

On October 31, 1986, three (3) days prior to the November 3 filing of the petitions, the Ottavis formed Paradise Pools and Spas of Tallahassee, Inc. Into this corporation they transferred the pool and spa inventory, equipment and some of the accounts receivable of Noco and the vehicles used in the business. This business together with Noco shares the leased premises owned by the Ottavis. The Ottavis are the sole shareholders, officers, and primary employees of the new pool and spa construction and service business.

The creditors Pinch a Penny and Sun filed motions to dismiss the Chapter 11 petitions alleging the debtors' bad faith filing thereof. The creditors allege:

1) The sole purpose for the filing of these petitions was to enable the debtors to reject the franchise agreement pursuant to § 365 of the Bankruptcy Code.

2) The formation of and transfer of assets to Paradise Pools was solely an attempt by the debtors to place assets beyond the bankruptcy jurisdiction and said transfer was otherwise wholly lacking a valid business purpose.

3) The debtors are currently paying all creditors with the exception of Pinch a Penny and Sun.

4) Three or four weeks prior to the filing of these petitions the debtor Ottavis purchased a 19 foot Stratos boat, motor and trailer for approximately $19,000. This acquisition serves no business purpose whatsoever.

5) The debtor Ottavis grossly undervalued household goods, reflecting a worth of $1,000 whereas the same assets were valued at $42,000 on bank financial statements signed shortly before the petition filing.

6) The debtor Ottavis grossly undervalued their real estate holdings, reflecting a worth of $530,000, whereas the financial statements earlier executed value the realty at $1,070,000.

7) The debtor Ottavis failed to list on their schedules and statement of affairs the following annual income:

$16,350 from Chicken Unlimited
$36,000 rental from Noco
$9,600 rental from Paradise

8) The debtors have constructively terminated the franchise by: (a) removal of the Pinch a Penny sign (b) advertising under the name of Paradise Pools (c) refusal to pay Pinch a Penny.

9) The debtors have filed their petitions to prevent adjudication of a non-bankruptcy cause of action.

The only creditors affected by these reorganization proceedings are Pinch a Penny and Sun. There is virtually no unsecured debt in either case. The debtors are solvent and earning sufficient income to pay all of their trade and other secured creditors on a current basis.

The debtors transferred practically the entire business operation and approximately $6,000 worth of accounts receivable to Paradise Pools on the eve of bankruptcy. This conveyance was without consideration to these estates. There was no attempt to alter the nature or location of this business. The debtors have neither opened new bank accounts nor segregated the funds of this business. The transfer of assets to Paradise Pools was not revealed on the debtors' schedules filed herein.

On November 1, 1986, two days prior to the petitions being filed, the debtor Neil Ottavi executed a warranty deed transferring from himself to his brother and his father two-thirds interest in a parcel of real

property with a value in excess of $250,000. Previously, he had been the sole record owner and mortgagor of the subject 2.53 acres. The debtor testified that both his brother and father had always been considered co-owners of the land and had continuously made their respective shares of the mortgage and tax payments thereon; that there had simply been an error made upon closing when the title was inadvertently issued in just his name. Yet financial statements presented to various banks by the debtor, Neil Ottavi, reflect his 100% ownership in the property. He previously granted to the city an easement on the property without joinder of the putative co-owners. The debtor has presented no documentary evidence to support his contention that the land was co-owned prior to the transfer by deed. There is nothing before this Court evidencing payment of the mortgage or taxes by the alleged co-owners. There is no basis under these circumstances to find the debtor to have been a holder in trust of the interests transferred on the eve of bankruptcy or that the transferees had any interests in said property prior to the transfer.

The debtors omitted certain rental income from their schedules and debtor-in-possession reports filed in this case and did not correct the omissions until questioned by the creditors at a Rule 2004 examination. Likewise a receivable from Chicken Unlimited, a previous business of the debtor Ottavis, was omitted from the schedules. Both rental income and receivable had been included on financial statements submitted earlier to various banks.

The debtors claim inexperience in preparing their schedules and in valuing their assets when questioned as to the discrepancies in amounts listed on financial statements versus schedules. They initially valued the boat, motor and trailer purchased less than one month earlier for $19,000 at $3,000 on their schedules. Following a Rule 2004 examination, this value was amended to $13,000. Household goods valued at $42,000 on financial statements prepared within a year prior to these petitions being filed were valued at $1,000. The debtors admitted to using a fire sale value on the schedules as opposed to replacement value used on the bank financial statements.

The Court finds the debtors' claim of lack of sophistication and naivete with regard to these schedule omissions and misrepresentations to be not credible. Neil Ottavi testified that he has a degree in business and that he has previously operated two successful franchises.

The creditors, Pinch a Penny and Sun filed foreclosure actions in Circuit Court against the debtor Ottavi's post-petition but withdrew their complaint upon learning of the Chapter 11 petitions. The Ottavis have asserted a claim against Sun and Pinch a Penny, reflecting in their schedules $75,000 as the estimated value of their contingent and unliquidated claim for damages as a result of alleged antitrust violations, fraud, and breach of contract by Fred A. Thomas, Pinch a Penny, and Sun Wholesale Supply, Inc. The Ottavis filed a multi-count action for damages against Fred A. Thomas, Pinch a Penny and Sun Wholesale Supply in this Court on February 18, 1987. That action is based primarily on state common law and statutory grounds (five (5) counts) together with one Federal RICO and one Federal anti-trust count. It is apparent to this Court that the debtors have filed their petitions in an attempt to avoid a state court foreclosure action and to litigate their state law actions before a federal forum.

On February 2, 1987, the debtors Ottavis and Noco filed motions to reject the franchise agreement as an executory contract with Pinch a Penny d/b/a Sun. The franchise agreement contains a covenant not to compete in the State of Florida for five years after termination of the franchise. The debtors freely admit that a major reason for filing their petitions was to reject the franchise agreement and specifically to be released from the covenant not to compete. Yet, if the debtors were to proceed and prevail elsewhere in an action challenging the enforceability of the franchise agreement, they would probably be relieved of the franchise agreement and covenant not to compete without attempting to

use the provisions of the Bankruptcy Code to achieve that goal.

■ Under the circumstances of this case the covenant not to compete contained in the franchise agreement would not be subject to the debtors' rejection under § 365 of the Bankruptcy Code (11 U.S.C. § 365). The debtor may only reject a contract which is executory. Looking to the date upon which these petitions were filed, the subject franchise agreement had reached near-expiration; it had then been breached by the debtor; Noco and the Ottavis had reaped all benefits thereunder, with the Ottavis amassing substantial personal assets; the franchisor had apparently met its obligations under the agreement, and has no obligations remaining. The only remaining obligations are on the part of the debtors in the form of the covenant not to compete. It is this one remaining obligation which the debtors seek to reject. This Court does not deem this agreement "executory" and subject to such rejection.

This case is similar to *In re Cooper*, 12 B.C.D. 1135 (Bkrtcy.W.D.MO 1985):

"... the agreement which is the subject of dispute was part of the terms of debtor's employment. There is no evidence that the other terms of employment were reduced to writing. An employment contract contemplates pay for work. Here that relationship has been terminated and debtor has no obligation to work for Carstens and Carstens has no obligation to pay. The non-competition agreement is alleged to remain. Although there was no evidence taken at the hearing, there is no suggestion or argument on behalf of debtor that Carstens has any performance remaining.

On the other hand debtor's obligation under the non-competition agreement remains executory. But he cannot reject unless the entire agreement is executory. It does not appear that such is the case.

.     .     .     .     .

The Court finds here that the agreement is not executory, Carstens having no performance obligation, and therefore the non-competition requirement may not be rejected. Compare *In re Norquist*, 43 BR 224 (Bkrtcy.E.D.Wash.1984) and *Matter of Sapse*, 31 BR 914 (Bkrtcy.S.D.Fla. 1983) with the present facts.

*In re Norquist*, 43 B.R. 224 (Bkrtcy.E. D.WA 1984), held that because debtor was entitled to distributive share of partnership profits accumulated during his tenure as an equal partner, and a detailed accounting by the partnership would be necessary to calculate that share, his partnership contract which contained a covenant not to compete was executory and could thus be rejected by the debtor. The *Norquist* case is thus distinguishable in that there were obligations remaining by both parties. The contract falls within the parameters of both the legislative history analysis and the definition of executory contract posted by Professor Countryman. According to the legislative history, executory contracts include contracts on which performance remains due to some extent on *both* sides. (emphasis added). 2 *Collier on Bankruptcy*, ¶ 365.02 at 365–12 (15th Ed.1982). This coincides somewhat with the definition given the term by Professor Countryman, to wit, "a contract under which the obligations of *both* the bankrupt and the other party are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." (emphasis added). Countryman, *Executory Contracts in Bankruptcy, Part I*, 57 Minn.L.Rev. 439, 460 (1973). This dual obligation test has likewise been adopted in *In re Silver*, 26 B.R. 526 (Bkrtcy.E.D.PA 1983).

■ Even if this contract were found to still be executory and subject to rejection, in order for the Court to approve the debtor's rejection of the contract, it must be shown to be beneficial to the unsecured creditors. *In re Setzer*, 47 B.R. 340 (Bkrtcy.E.D.N.Y.1985); *In re Silver, supra*. As the Ottavis and Noco have virtually no unsecured creditors, it is evident that rejection of the franchise agreement will benefit solely the debtors, thus approval of this action would be withheld.

Lastly, even if such contract rejection were allowed, it is not legally conclusive that such rejection would rid the debtor of his obligation under the covenant not to compete. As stated in.*In re Carrere*, 14 B.C.D. 977, 979 (Bkrtcy.C.D.CA 1986), "Rejection of an executory contract constitutes a breach, which is deemed to have occurred immediately before the date of filing of the petition. (11 U.S.C. § 365(g)(1)). The claim for monetary damages thus becomes a claim in the estate, (11 U.S.C. § 502(g))," and subject to the discharge provisions. (See also *In re Norquist, supra*.) "But a rejection under the Bankruptcy Code only affects the monetary rights of the creditor. It does not disturb equitable, non-monetary rights that the creditor may have against the debtor because of the breach of contract." These rights include the creditor's right to seek an injunction so that the debtor can not breach the negative promise not to compete. *Carrere, supra* at page 979.

In direct contrast to both the *Carrere* and the *Cooper* decisions is the case of *In re Rovine Corporation*, 5 B.R. 402 (Bkrtcy.W.D.TN 1980), wherein the franchisor commenced an adversary proceeding to enforce an agreement not to compete subsequent to the debtor's rejection of the franchise agreement containing that covenant. In determining whether the covenant not to compete survived the rejection of the franchise agreement or whether it was effectively rejected along with the agreement's other provisions, the Court focused on the covenant itself apart from the remainder of the contract, and held it to be executory. (Compare *In re Cooper, supra, to wit:* "... he can not reject unless the entire agreement is executory"). The Court then ruled that the covenant not to compete had been rejected and thus denied the franchisor's request for temporary injunction. The *Rovine* court did not apply the dual-obligation analysis nor did it discuss the franchisor's equitable state law remedies apart from its contract rights as did *In re Carrere, supra*. This Court disagrees with the *Rovine* decision. Accordingly this Court would deny the debtors'

motion to reject the franchise agreement as an executory contract.

The Court must now consider the creditors' motion to dismiss for lack of good faith. "In finding a lack of good faith, courts have emphasized an intent to abuse the judicial process and the purposes of the reorganization provisions. Particularly when it is evident that the debtor seeks merely to delay or frustrate the legitimate efforts of secured creditors to enforce their rights, dismissal of the petition for lack of good faith is appropriate." *In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir.1984). (See also, *In re Setzer, supra; In re Herndon*, 36 B.R. 803 (Bkrtcy.M.D.FL 1984)). It is apparent from the facts herein that the filing of these petitions was a litigation tactic to stall and frustrate these creditors. The debtors have sought the protective provisions of the Code in an effort to resolve in their favor a two-party dispute based on non-bankruptcy law; a dispute solely between Frederick Thomas Industries and the Ottavis. "... [B]ankruptcy courts should become involved in cases only if the bankruptcy court's services are needed to truly reorganize a debtor who is having financial problems; however, if the matter can be dealt with by another forum, better equipped to do it and in a better position to deal with a dispute between two parties or just a few parties, the bankruptcy court should refrain from exercising its jurisdiction." *In re Heritage Wood Estates, Inc.*, 73 B.R. 511 (Bkrtcy.M.D.FL 1987). As in *Heritage Wood Estates*, this Court finds that with few exceptions these debtors have no unsecured creditors, and the secured creditors can look out for themselves in a nonbankruptcy forum. This dispute can and should be resolved outside of the Bankruptcy Court's jurisdiction. The filing of these petitions has resulted in unfair and discriminatory treatment of these creditors by the debtors. (See *In re Landmark*, 10 B.C.D. 110 (Bkrtcy.D.AR 1983); *In re Martin*, 51 B.R. 490 (Bkrtcy.M.D.FL 1985)).

The debtors bear the burden of proving that the petitions were filed in good faith. *In re Setzer, supra* 47 B.R. at 345. Here,

they are clearly attempting to use the reorganization process to litigate non-bankruptcy isses and to avoid the burdens of a contract over five years old under which they built a successful business. They made significant transfers of assets immediately prior to filing their petitions and failed to disclose the transfers in their schedules. They have omitted income from their Statement of Income and Expenses and have grossly understated the value of their personal assets in their schedules. Except for their dealings with the moving creditors here, the debtors have carried on business has usual, paying all other creditors on a current basis as if these cases had never been filed. All these factors must be considered in determining if the debtors filed these cases in good faith or if the debtors are attempting to abuse the jurisdiction of this Court. It is the opinion of this Court that the debtors did not seek the protections of the Bankruptcy Code in a bona fide effort to reorganize. "The cornerstone of the bankruptcy courts has always been the doing of equity. The protections and forgiveness inherent in the bankruptcy laws surely require conduct consistent with the concepts of basic honesty. Good faith or basic honesty is the very antitheses of attempting to circumvent a legal obligation through a technicality of the law." *In re Waldron*, 785 F.2d 936, 941 (11th Cir.1986). These Chapter 11 cases are thus found to have been filed in bad faith. Accordingly, it is

ORDERED AND ADJUDGED that the motion of the creditors be, and it hereby is, granted and the Chapter 11 petitions of Noco and the Ottavis are hereby dismissed.