**In re RIPPLES OF CLEARVIEW, INC., Debtor.**

**LE HAVRE ASSOCIATES, INC., Plaintiff,**

v.

**RIPPLES OF CLEARVIEW, INC., Defendant.**

**Bankruptcy No. 182–12711–21.
Adv. No. 182–0543–21.**

United States Bankruptcy Court, E.D. New York.

Jan. 11, 1983.

Dreyer & Traub, New York City, for plaintiff; Martin I. Klein and Robin A. Levitt, New York City, of counsel.

Verini, Maloney & Gottlieb, New York City, for debtor-defendant; Stephen S. Gottlieb, New York City, of counsel.

CECELIA H. GOETZ, Bankruptcy Judge:

This is a proceeding brought on November 5, 1982 by the owner of certain premises in Whitestone, New York seeking relief under § 362 of Title 11 from the automatic stay imposed by the Bankruptcy Code so that it may execute a warrant of eviction against the debtor.[1]

---

1. This proceeding is covered by the Order of the United States District Court for the Eastern District of New York captioned "In re Jurisdiction of the Bankruptcy Court," dated December 21, 1982. According to paragraph d(3)(A) of that Order, this is not a "related proceeding," since it is a proceeding with respect to the lifting of the automatic stay. Accordingly, under paragraph d(2) of the District Court's Order, the Order entered herein becomes final upon entry by the Clerk of the Bankruptcy Court, unless stayed by the Bankruptcy Judge or the District Judge.

## THE FACTS

Ripples of Clearview, Inc. ("Ripples"), the debtor-defendant, operates a catering establishment on the premises which are the subject matter of the present proceeding. The premises consist of a three-story building totaling approximately 35,000 feet, plus surrounding acreage all lying on the water. The building itself is sufficiently unusual for it to have been awarded landmark status within the past year.

Since December, 1975, when Ripples' sublease was terminated by a judgment of foreclosure and sale, it has been occupying the premises as a month-to-month tenant. That tenancy was terminated by a 30-day notice, effective August 31, 1981.

Thereafter, LeHavre Associates, Inc. ("LeHavre") commenced a summary eviction proceeding against Ripples in September, 1981 in the Civil Court of the City of New York, County of Queens. This proceeding was consolidated with an action brought by Ripples in Supreme Court of the State of New York, County of Queens, seeking a declaratory judgment that it had certain ongoing rights to remain as a tenant. After trial, the Honorable Eugene Bambrick issued a decision dismissing Ripples' complaint, and granted LeHavre its petition to evict Ripples. By judgment signed by Justice Bambrick on April 27, 1982, a warrant of eviction was directed to be issued forthwith, with execution stayed until May 6, 1982. At the time the decision issued, the last date for which Ripples had accepted a booking was October, 1983.

Ripples appealed from Justice Bambrick's judgment and obtained a stay pending appeal. By order dated July 19, 1982, the Appellate Division, Second Department, unanimously affirmed Justice Bambrick's judgment. Ripples' motion for permission to appeal to the Court of Appeals was denied on October 19, 1982.

On the day the automatic stay under CPLR 5519 expired, Ripples sought, and obtained, from Justice Bambrick an order to show cause containing a stay of all proceedings to enforce the judgment and bringing on for hearing a motion to set a schedule for an orderly eviction.

Argument on Ripples' motion before Justice Bambrick was scheduled to commence at 2:00 p.m. on October 29, 1982. After oral argument, at which Ripples sought to delay its eviction until January, 1983, Justice Bambrick announced his decision that the warrant of eviction to remove Ripples should be issued forthwith, with execution stayed until November 16, 1982. He then signed an order and judgment incorporating that decision at about 3:00 p.m. At precisely 3:08 p.m. that same day, Ripples filed its Chapter 11 petition in the bankruptcy court.

The petition shows total assets of $52,050, of which $35,000 is represented by office machinery and equipment, and $15,000 by perishables like liquor, food, and paper goods. The close of Ripples' fiscal year coincided with the date of the filing of the petition. Last year, Ripples grossed approximately $600,000, on which its net income, exclusive of salary paid its principal, was approximately $15,000. David Sobel, in the Chapter 11 affidavit filed in support of Ripples' petition, states that he receives a weekly salary of $600 as general manager of the corporation's catering business. He also states that he estimates that his profit for the 30 days following the filing of the petition will be $4,000.

The petition lists liabilities of $111,677. Of this figure, $40,877 is owed trade creditors and attorneys, with no claim more than two months old. The balance consists of monies owed on deposits left with Ripples for affairs to be held in the future. It is the custom of Ripples to require a deposit of up to 35 percent of the total price at the time it books an affair. The average cost of the use of the premises is $6,000. Ripples' petition lists approximately 61 creditors, with deposits ranging from $300 to $2,000, from whom it has received deposits for scheduled weddings, bar mitzvahs, and christenings, up to and including October, 1983. The bulk of these contracts were entered into, and the deposits taken, subsequent to the issuance of Justice Bambrick's decision on April 27, 1982 directing a warrant of eviction to be issued forthwith. No

deposit, however, has been taken for an affair subsequent to October, 1983, the last month for which Ripples had a booking which that decision issued.

Ripples had not informed the persons from whom it had taken these deposits that it might be unable to continue in its occupancy of the subject premises, although there may have been some awareness by reason of the public press of that fact.

Ripples' position is that the deposits it has received, which it commingled with its other funds, have all been spent, and that unless it is permitted to continue in occupancy of its premises, it will be unable either to return the deposits to its creditors, or to provide them the services for which they have paid. Contrariwise, Ripples maintains that if it is permitted to stay in occupancy, it will carry out the contracts on which it has received deposits, so that all these consumer creditors will be satisfied. Mr. Sobel testified that the demand for catering establishments is such that many of those who have booked affairs with Ripples will be unable to locate substitute facilities.

No plan of arrangement was filed with the petition. When the debtor's principal, Mr. Sobel, was asked what plan he proposes, his answer was that that depended upon whether or not he was permitted to stay in occupancy of the premises. Ripples has apparently not looked for, nor located, any premises suitable for the operation of its catering business.

The plaintiff has no purchaser at present for the premises, nor has it entered into any contract of sale.

## DISCUSSION

Because the filing of a petition for relief under the bankruptcy laws automatically arrests all proceedings against a debtor, including eviction proceedings, tenants increasingly, having exhausted their remedies in the state courts, are using the bankruptcy courts to perpetuate a possession which the state courts have ordered terminated. *In re Jolly Joint, Inc.,* 23 B.R. 395, 9 B.C.D. 841 (Bkrtcy.E.D.N.Y.1982); *In re Darwin,* 22 B.R. 259 (Bkrtcy.E.D.N.Y.1982); *In re GSVC Restaurant,* 3 B.R. 491 (Bkrtcy.S.D. N.Y.), aff'd, 10 B.R. 300 (D.C.S.D.N.Y.1980).

In this case, the owner of these premises has been battling vigorously to reclaim them from Ripples since May, 1981. The debtor, which has been carrying on a very profitable business in the premises, has fought the owner every inch of the way, making use of every avenue of delay. Not until almost a full year after the owner sought possession of the premises, did it secure a judgment from the Supreme Court of the State of New York on April 13, 1982 entitling it to such possession. But its victory turned out to be more apparent than real, as Ripples successfully utilized the avenues of appeal available to it which bought it yet another six months through October 26, 1982.

When the appellate processes were exhausted, Ripples went back to the trial court, solely to request that it be permitted to stay in possession through the second week of January, 1983. Indeed, it would be reasonable to infer that the sole purpose in seeking an order to show cause from the trial court was to secure the time necessary to file a petition in this Court which, whatever the New York court would do, would assure the debtor that it could keep the owner out of its premises and continue to enjoy its low-cost occupancy. Were Ripples in genuine need of relief under the bankruptcy laws, its petition would not have been timed exactly to coincide with the exhaustion of all efforts in the state court to fend off eviction.

Ripples' first line of defense against LeHavre's complaint is a procedural one. Ripples contends that only secured creditors can obtain relief under subsection (d) of § 362 from the stay imposed by subsection (a) of § 362. Subsection (d) begins: "On request of a party in interest * * * the court shall grant relief from the stay provided under subsection (a) * * *." Ripples maintains that only a secured creditor is a "party in interest," and, therefore, a landlord is not entitled to relief under that language.

The numerous cases giving landlords relief from the automatic stay are distinguished by Ripples on the ground that they involve debtors who had fallen behind on their rent, so that the landlord was a creditor. The silence in the legislative history respecting landlords is also relied on to support Ripples' evisceration of the broad language of § 362(d).

As the Court stated during the hearing, it seems too clear to even require argument that the relief from stay provided by subsection (d) has to be as broad as the stay imposed by subsection (a). Subsection (a) does not simply affect secured creditors; it stops all proceedings of any character against the debtor, with the exceptions of those proceedings carved out by subsection (b). Under Ripples' view, the stay would be imposed, but there would be no relief from it. For landlords, the stay would be perpetual, continuing until the proceeding was dismissed or otherwise terminated.

It is true that the creditors most likely to be seeking relief under § 362(d) will be secured creditors because ordinary creditors will not ordinarily be eligible for relief, since the very purpose of the stay is to stop the race of creditors to judgment and execution. But the fact that secured creditors may be the category expected to make greatest use of subsection (d) does not make them the exclusive beneficiary of that provision. The legislative intent is to be sought, first, in the language Congress employed. Congress authorized any "party in interest," not simply a secured creditor, to seek relief from the stay. It would contravene the legislative intent to give the phrase "party in interest" any meaning other than its natural and ordinary one. The breadth of the term used by Congress to designate who may bring a proceeding for relief from stay, the term "party in interest," cannot be cut down because the discussion in the Committee Reports is not exhaustive respecting who may constitute such parties in interest.

Ripples' second line of defense is that the landlord has not shown "good cause" for the relief it seeks, since the landlord has no buyers for the property and Ripples is willing to continue paying the rent, and has been paying it, which, according to Ripples, "was a fair rental at the time negotiated." Brief of Debtor-Defendant Ripples of Clearview, Inc., at 4–5. The landlord's position is that it is entitled to have the property which it owns to do with it as it elects, and that it can neither lease, nor sell, it while Ripples remains in indefinite possession.

Justice Bambrick's decision establishes that Ripples has no lease and no right to continue in possession of the premises. Thus, the record squarely presents the question whether an occupant of premises with no lease and no legal right to remain in possession can, nevertheless, hang on to such possession indefinitely by filing for relief under the bankruptcy laws.

The fact that under the Bankruptcy Code the stay is automatic, does not shift the burden of establishing the right to continuation of the stay. Section 362 in fact so provides: subsection (g) states flatly that at any hearing under subsection (d), the party opposing relief from stay has the burden of proof upon all issues, except on the issue of the debtor's equity in the property. In this case, the plaintiff has met its burden: it has established that the debtor has no equity whatever in the property.

The sole reason Ripples offers for continuing the stay is that if it is permitted to remain in possession for the next ten months, it will be able to carry out the contracts into which it deliberately entered after the New York Supreme Court had ordered a warrant of eviction to issue. After Justice Bambrick's decision on April 27, 1982, Ripples continued to accept from innocent third parties substantial deposits on services for which Ripples needs the use of LeHavre's premises. Ripples maintains that without such premises, not only can it not render the services for which these innocent consumers have contracted, but that it will be unable even to return to them the money they have in good faith paid it because it is without funds to reimburse them. The Court questions the assertion that these

creditors will only receive back their deposits if this Court permits a possession which the New York courts have disapproved. This Court finds incredible that a business that grossed $600,000 last year on the sale of services which normally carry a large markup, and which has had the advantage of operating at a very low rental, did not generate enough funds to be able to repay consumer creditors approximately $70,000. Many of these deposits were taken prior to the end of the corporation's 1981 fiscal year. If any profits were distributed to the owners of the corporation, leaving the corporation stripped of the monies given for deposits, a trustee should be able to trace and recapture that money. The creditors might want to consider applying for appointment of a receiver or a trustee so as to trace the assets of the company and recover any improperly diverted monies to insiders. But even if these innocent consumers could not be made whole, this Court would not for that reason perpetuate the possession which the local New York courts ordered terminated a year and a half ago. Ripples, with full knowledge that its occupancy was most uncertain and that it stayed in possession only by virtue of the appeals, created this web of contracts in which it now seeks to enmesh the owner. It seeks to profit by its own wrongdoing: by having induced persons to place deposits for services which Ripples necessarily knew it might not be in a position to perform, it has created a group of wronged persons whose claims it now asserts on its own behalf.

Ripples attempts to justify its conduct by urging that "it was incumbent upon Ripples to continue booking affairs [because] any other course of action would have effectively put Ripples out of business and rendered a favorable State Court decision moot." Reply Brief of Debtor-Defendant Ripples of Clearview, Inc., at 1. But, clearly, it was not incumbent upon Ripples to spend the deposits received. These monies should have been held in trust pending disposition of Ripples' appeal. They would then have been available to be returned to the consumers from whom they were taken.

The cases on which Ripples relies are not in point. This is not a situation like that in *Queens Boulevard Wine & Liquor Corp. v. Blum,* 503 F.2d 202 (2d Cir.1974), where the landlord is seeking to take advantage of a bankruptcy clause to terminate a tenancy; this case is just the reverse—a tenant seeking to take advantage of bankruptcy to prevent the landlord from terminating a tenancy. Nor is this a case where a tenant, with a possible viable plan of rehabilitation, has demonstrated need for particular property to carry out its plan. So far, Ripples has proposed no plans looking to its continuation in business. There is no similarity between the situation present here, and that in *In re Fontainebleau,* 515 F.2d 913 (5th Cir.1975). Ripples' argument is solely that if it is permitted to use LeHavre's property for another year, *i.e.,* through October, 1983, it will carry out all the catering arrangements on which it has taken deposits. In short, it is prepared to stay in business as long as it stays in possession of LeHavre's property.

In the view of this Court, Ripples has failed to meet a burden of justifying continuation of the automatic stay. LeHavre is entitled to the relief it seeks.

For the foregoing reasons, the stay will be lifted so as to permit the warrant of eviction to issue.