**FIRST JERSEY NATIONAL BANK, Plaintiff,**

v.

**Rosemary BROWN, Defendant.**

**(In re Rosemary BROWN, Debtor).**

**Civ. No. 90–371 (CSF).**

United States District Court, D. New Jersey.

April 11, 1991.

Ravin, Sarasohn, Cook, Baumgarten, Fisch & Baime by Peter R. Sarasohn, Bruce Buechler, Roseland, N.J., for plaintiff.

Ross & Hardies by Helen Davis Chaitman, Somerset, N.J., for defendant.

## OPINION

CLARKSON S. FISHER, District Judge.

Before the court is an appeal on the merits from the December 11, 1989 order of the bankruptcy court brought by First Jersey National Bank ("FJNB"). For the reasons set forth below, the order of the bankruptcy court is reversed and this matter is remanded with instructions to dismiss the petition of the debtor.

## FACTS AND PROCEDURAL HISTORY

The debtor, Rosemary Brown, is a housewife; together with her husband, Gary

Brown, she is the co-owner of three parcels of real property. The properties include their residence, a home in Moorestown, New Jersey, and income-producing properties located in Ocean City, New Jersey, and New Smyrna Beach, Florida.

The Browns were the principals of Repro Supply Corporation ("Repro"). In 1985, Repro obtained a line of credit with FJNB, but by October 1986, Repro apparently exceeded its credit limit, prompting FJNB to withhold further advances. On November 13, 1986, Repro filed a chapter 11 proceeding in the United States Bankruptcy Court for the District of New Jersey. Thereafter, Repro remained in business as a debtor in possession. Repro needed additional financing, and FJNB agreed to supply that financing on the condition that it be given mortgages on the three properties personally owned by the Browns. On November 21, 1986, on Repro's application, the bankruptcy court entered a cash collateral order authorizing the advances on the security of the three properties and the mortgages were subsequently executed and delivered. The attempt at reorganization of Repro failed, and on September 16, 1987, the bankruptcy court ordered FJNB to liquidate Repro's assets.

This liquidation did not satisfy Repro's debt to FJNB. Consequently, FJNB brought an action in the Superior Court of New Jersey against the Browns to foreclose the mortgages on the New Jersey properties. Though the foreclosure was contested, on February 6, 1989, FJNB obtained an order for summary judgment striking the Browns' pleadings and permitting the action to proceed as though uncontested. On application of the Browns, the Superior Court reconsidered its order but in a letter opinion dated July 27, 1989, permitted its order granting FJNB's motion for summary judgment to stand.

On September 25, 1989, the Browns requested a hearing in the Superior Court to determine the amount due on the mortgage. However, on October 10, 1989, before the hearing was held, Rosemary Brown filed a voluntary petition for reorganization pursuant to chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey.

In the petition, Rosemary Brown identified the first mortgage holders and FJNB as secured creditors for each of the properties. Rosemary Brown listed the claim with FJNB for $1,154,298.48 as disputed. The debtor also identified three unsecured creditors, having claims totaling $17,010.00.

On November 14, 1989, FJNB filed a motion to dismiss the petition pursuant to section 1112(b) of the Bankruptcy Code on the ground that the debtor had filed the petition in bad faith. In support of its motion, FJNB cited the following facts as evidence of the debtor's improper use of the bankruptcy process:

1. The debtor's petition was filed shortly after summary judgment was granted in favor of FJNB;

2. Other than the collateral which served as security for the FJNB collateral mortgages, the debtor had few assets;

3. The debtor was an individual, and not a business;

4. The debtor had no persons in her employ;

5. The impetus behind the debtor's filing was her dispute with FJNB, and

6. The debtor's husband, Gary Brown, who was a co-debtor on all the obligations listed in the debtor's petition, did not file for bankruptcy, raising the spectre of serial filings and unnecessary delays.

On December 11, 1989, the bankruptcy court entered an order denying FJNB's motion to dismiss, and on the same day FJNB filed a notice of appeal to this court. On April 16, 1990, this court entered an order denying FJNB's appeal on the ground that the bankruptcy court's December 11, 1989, order was not a final order and, therefore, was not appealable as a matter of right under 28 U.S.C. § 158(a). This court treated FJNB's notice of appeal as a motion for leave to appeal pursuant to Bankruptcy Rule 8003(c), and denied it. FJNB filed a notice of appeal to the Court of Appeals for the Third Circuit.

On October 18, 1990, the Court of Appeals for the Third Circuit reversed this court on the ground that the order of the bankruptcy court was final within 28 U.S.C. § 158(a) 916 F.2d 120. By an October 24, 1990, order amending the slip opinion, the Third Circuit remanded the case to this court for adjudication on the merits.

### THE DECISION OF THE BANKRUPTCY COURT

On December 11, 1989, the bankruptcy court denied FJNB's motion to dismiss Rosemary Brown's chapter 11 case. After considering each of the factors raised by the bank, the bankruptcy court found that those factors did not support a finding of bad faith.

The bankruptcy court concluded that the pendency of foreclosure proceedings at the time of the filing of the debtor's chapter 11 petition did not indicate a lack of good faith. The debtor's lack of substantial assets other than the secured property did not indicate bad faith, the bankruptcy court concluded. The lower court also held that it was not necessary for the debtor to be engaged in business in order to qualify for relief under chapter 11.

The bankruptcy court did not consider the debtor's lack of substantial and unsecured creditors to be evidence of bad faith. The bankruptcy court noted that, although there were unsecured creditors, that factor would not be dispositive.

The bankruptcy court determined that, as of the time of its ruling on FJNB's motion to dismiss, it was impossible to conclude that the debtor did not have a reasonable prospect for a successful reorganization. In this regard, the bankruptcy court noted that the debtor had represented an intention to attempt to work out a plan of reorganization.

The bankruptcy court noted that as of the time it was reviewing FJNB's motion to dismiss Rosemary Brown's petition on the ground of bad faith, Gary Brown had not filed a bankruptcy petition. Although it expressed concern over this failure, the bankruptcy court decided this factor did

not warrant dismissal of Rosemary Brown's bankruptcy petition.

The bankruptcy court next reviewed the decision of the state court granting summary judgment in favor of FJNB, and commented:

> I find it surprising, if not amazing, that the Superior Court Judge decided there were not genuine issues of material fact here....
>
> [T]he fact that this—that the matters at issue arose from a Chapter 11 bankruptcy proceeding make this Court more cognizant, potentially cognizant, of the nuances and subtleties which could conceivably, with all due respect to the Superior Court, slip by it; and I'm—I have decided that this matter is going to be adjudicated here.

Tr. at 41–42 (Dec. 11, 1989); *see also id.* at 37–38.

Finally, the bankruptcy court, recognizing that final judgment of foreclosure had not been entered in the state court, held that the principles of *res judicata* and collateral estoppel were inapplicable and would not bar the bankruptcy court from adjudicating Rosemary Brown's rights and obligations.

### STANDARD OF REVIEW

The findings of fact of the bankruptcy court will not be set aside unless clearly erroneous. Fed.R.Civ.P. 52(a); *In re Sharon Steel Corp.*, 871 F.2d 1217, 1222–23 (3d Cir.1989). The finding of the bankruptcy court that the filing of the petition was made in good faith is subject to the clearly erroneous standard. *Carolin Corp. v. Miller*, 886 F.2d 693, 702 (4th Cir.1989); *In re Holi–Penn, Inc.*, 535 F.2d 841, 844–45 (3d Cir.1976). This court will decide legal issues de novo. *Sharon Steel Corp.*, 871 F.2d at 1222–23.

### ANALYSIS

Before the bankruptcy court, FJNB asserted that dismissal of Rosemary Brown's case under section 1112(b) was justified on the grounds that the debtor filed its petition in bad faith and the debtor could not

**112**

effectuate a reorganization plan pursuant to 11 U.S.C. § 1112(b)(2).

Section 1112(b) of the Bankruptcy Code provides:

(b) Except as provided in subsection (c) of this section, on request of a party in interest or the United States trustee, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including—

(1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;

(2) inability to effectuate a plan;

(3) unreasonable delay by the debtor that is prejudicial to creditors;

(4) failure to propose a plan under section 1121 of this title within any time fixed by the court;

(5) denial of confirmation of every proposed plan and denial of a request made for additional time for filing another plan or a modification of a plan;

(6) revocation of an order of confirmation under section 1144 of this title, and denial of confirmation of another plan or a modified plan under section 1129 of this title;

(7) inability to effectuate substantial consummation of a confirmed plan;

(8) material default by the debtor with respect to a confirmed plan;

(9) termination of a plan by reason of the occurrence of a condition specified in the plan; or

(10) nonpayment of any fees or charges required under chapter 123 of title 28.

11 U.S.C.A. § 1112(b) (West 1979 & Supp. 1991). Congress provided this explanation for subsection b of section 1112:

Subsection (b) gives wide discretion to the court to make an appropriate disposition of the case when a party in interest requests.... Cause may include ... [the ten factors listed in § 1112(b) ]. The list is not exhaustive. The court will be able to consider other factors as they arise, and to use its equitable powers to reach an appropriate result in individual cases.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 405–06, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6361–62; *see also* S.Rep. No. 989, 95th Cong., 2d Sess. 117, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5903.

■ In section 1112(b), Congress intentionally refrained from limiting the factors constituting "cause" in order to enable a bankruptcy court to dismiss a chapter 11 case for any abuse of the bankruptcy reorganization process. *In re HBA East, Inc.,* 87 B.R. 248, 258 (Bankr.E.D.N.Y.1988). The bad faith filing of a bankruptcy petition is sufficient "cause" to warrant dismissal of an action under this section. *Carolin,* 886 F.2d at 698–99; *In re Little Creek Dev. Co.,* 779 F.2d 1068, 1072 (5th Cir. 1986); *In re Albany Partners Ltd.,* 749 F.2d 670, 674 (11th Cir.1984); *In re Ravick Corp.,* 106 B.R. 834, 842 (Bankr.D.N.J. 1989); *HBA East,* 87 B.R. at 258; *see also In re Waldron,* 785 F.2d 936, 939 (11th Cir.) (examining good faith requirement of 11 U.S.C. § 1325(a)(3)), *cert. dismissed,* 478 U.S. 1028, 106 S.Ct. 3343, 92 L.Ed.2d 763 (1986).

■ The implicit good faith requirement in this statute preserves the integrity of the bankruptcy process by ensuring that debtors who seek bankruptcy reorganization protection do so for no purpose other than to accomplish the legitimate aims and objectives of the statute. *HBA East,* 87 B.R. at 258; *see Carolin,* 886 F.2d at 698–99; *Little Creek,* 779 F.2d at 1072; *Ravick,* 106 B.R. at 842–43. If the filing of an action will not achieve the valid, legitimate purposes of the rehabilitative provisions of chapter 11, dismissal is appropriate. *Ravick,* 106 B.R. at 843.

■ Before a court may dismiss a petition on the ground that the debtor filed in bad faith, it must be clear that resort to the bankruptcy process will prove futile and that subjective bad faith on the part of the debtor exists. *Carolin,* 886 F.2d at 700–01; *see also Little Creek,* 779 F.2d at 1072; *Albany Partners,* 749 F.2d at 674. When

there is no realistic possibility of an effective reorganization, resort to the bankruptcy process will ultimately prove to be futile. *Albany Partners,* 749 F.2d at 674.

■ Therefore, the first inquiry the bankruptcy court must undertake when presented with a motion to dismiss under section 1112(b) for lack of good faith is whether there was a need and realistic ability to effectuate a reorganization. In this regard, the concern of the bankruptcy court is whether there is a going concern to preserve and whether there is the possibility that the debtor "will emerge from the Chapter 11 proceedings in a rehabilitated condition—that is, ready to carry on with viable business operations." *Carolin,* 886 F.2d at 701, 702.

■ In response to FJNB's assertion that the petition of the debtor should be dismissed because the debtor had no ongoing business to reorganize, the bankruptcy court noted: "I think the purpose of Chapter 11 is to effect the financial reorganization of a debtor. There does not necessarily have to be an ongoing business. In fact, it is axiomatic that individuals can file Chapter 11 cases. That is clear." Tr. at 34 (Dec. 11, 1989).

The bankruptcy court then concluded that because Rosemary Brown had represented to the court an intention to submit a reorganization plan and because the motion to dismiss was brought at an early stage in the proceedings, the motion to dismiss would be denied.

In this circuit, the question of whether an individual not engaged in business may file a chapter 11 case is unresolved. The Court of Appeals for the Eleventh Circuit has held that a person not engaged in business may ask for relief under chapter 11. *See In re Moog,* 774 F.2d 1073, 1075 (11th Cir.1985). The Courts of Appeal for the Fifth, Sixth and Eighth Circuits have concluded that chapter 11 is available only to businesses and individuals engaged in business. *See Wamsganz v. Boatmen's Bank of De Soto,* 804 F.2d 503, 505 (8th Cir.1986); *Little Creek,* 779 F.2d at 1073; *In re Winshall Settlor's Trust,* 758 F.2d 1136, 1137 (6th Cir.1985).

The legislative history of chapter 11 reveals that Congress intended this chapter to permit the reorganization of an unsuccessful business. "Chapter 11 deals with the reorganization of a financially distressed business enterprise, providing for its rehabilitation by adjustment of its debt obligations and equity interests." S.Rep. No. 989, 95th Cong., 2d Sess. 9, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5795. This is "[t]he single chapter. for business reorganization," the Senate noted in its report on the Bankruptcy Reform Act of 1978. *Id.* "Chapter 11, Reorganization, is primarily designed for businesses, although individuals are eligible for relief under the chapter. The procedures of chapter 11, however, are sufficiently complex that they will be used only in a business case and not in the consumer context." *Id.; see also Wamsganz v. Boatmen's Bank of De Soto,* 804 F.2d 503, 505 (8th Cir.1986).

This court agrees with those decisions holding that only businesses and persons engaged in business may seek relief under chapter 11 of the Bankruptcy Code. Therefore, this court concludes that the lower court erred as a matter of law when it held that Rosemary Brown, an individual not engaged in business, could file a chapter 11 petition.

■ Moreover, even if this court assumed, for the sake of argument, that an individual not engaged in business could proceed under chapter 11, the record does not support a finding that the debtor had a reasonable likelihood of rehabilitation. The facts reveal that the debtor had no cash flow and no source of income. If the debtor received money at all, she received it from her husband, Gary Brown. The debtor indicated no other prospect for income. All of the assets owned by the debtor were jointly held with Gary Brown. As of the time of the order of the lower court, Gary Brown had not filed a chapter 11 petition. Based upon these facts, the implicit finding of the lower court that if permitted to obtain the protection afforded under chapter 11, Rosemary Brown would become

more likely to satisfy the debt owed to her creditors was clearly erroneous.

■ The next inquiry is whether Rosemary Brown filed her petition in subjective bad faith. There is no particular test for determining whether bad faith exists. *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394 (11th Cir.1988). Courts should consider all of the circumstances of the case in order to determine whether the debtor has evidenced an intent to abuse the judicial process and the purposes of the reorganization provisions of the Code. *Id.; see also Ravick*, 106 B.R. at 843. In particular, courts should examine any factors indicating that the debtor filed the petition in an attempt to delay or frustrate the legitimate efforts of secured creditors to enforce their rights. *Phoenix Piccadilly*, 849 F.2d at 1394 (citing *Albany Partners*, 749 F.2d at 674).

In *Little Creek*, the Court of Appeals for the Fifth Circuit noted that the determination of whether a debtor's filing is in good faith depends "largely upon the bankruptcy court's on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities." 779 F.2d at 1072. The court then identified the circumstances that typically surround a bad faith filing of a bankruptcy petition:

> The debtor has one asset, such as a tract of undeveloped or developed real property. The secured creditors' liens encumber this tract. There are generally no employees except for the principals, little or no cash flow, and no available sources of income to sustain a plan of reorganization or to make adequate protection payments pursuant to 11 U.S.C. §§ 361, 362(d)(1), 363(e), or 364(d)(1). Typically, there are only a few, if any, unsecured creditors whose claims are relatively small. The property has usually been posted for foreclosure because of arrearage[] on the debt and the debtor has been unsuccessful in defending actions against the foreclosure in state court. Alternatively, the debtor and one creditor may have proceeded to a stand-still in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford. Bankruptcy offers the only possibility of forestalling loss of the property....
>
> Resort to the protection of the bankruptcy laws is not proper under these circumstances because there is no going concern to preserve, there are no employees to protect, and there is no hope of rehabilitation, except according to the debtor's "terminal euphoria."

*Id.* at 1073.

■ The presence of these factors evidences a bad faith filing. *Id.; Phoenix Piccadilly*, 849 F.2d at 1394–95. But not all of these factors need be present for a court to find a lack of good faith, and no one factor is controlling. *Ravick*, 106 B.R. at 843; *see also Carolin*, 886 F.2d at 701. A court should be careful to avoid placing undue emphasis on the particular factors noted in *Little Creek*, however; instead, a court should closely examine the totality of the circumstances in the case before it. *Carolin*, 886 F.2d at 701.

An examination of the totality of the circumstances revealed that the debtor was not an ongoing concern and had no employees. The debtor had no cash flow and no source of income. According to her petition, the debtor had only three unsecured creditors. The claims of these creditors amounted to $17,010.00 in the aggregate. In comparison with the claim of FJNB for over $1 million, the claims of unsecured creditors were relatively small.

The debtor had few assets. The substantial asset she did possess was equity in the real property jointly owned with Gary Brown, an individual who had not filed a chapter 11 petition.

Finally, a state court had entered an adverse decision in an action between the debtor and FJNB, which was a two party dispute based on state law. In lieu of an appeal, and on the eve of foreclosure proceedings, the debtor filed a chapter 11 petition.

In spite of the foregoing, however, the bankruptcy court concluded that the debtor filed her bankruptcy petition in good faith. This finding was clearly erroneous. Rose-

mary Brown's filing for relief under the Bankruptcy Code after the entry of summary judgment in favor of a secured creditor, FJNB, in state court was intended to frustrate the legitimate efforts of FJNB to enforce its rights. *See Carolin*, 886 F.2d at 703–04; *Ravick*, 106 B.R. at 844; *see also Waldron*, 785 F.2d at 939–40. By finding that bad faith did not exist, the bankruptcy court permitted Rosemary Brown to do that which she could not do: use the bankruptcy forum for purposes other than reorganization.

■ Moreover, the bankruptcy court determined that Rosemary Brown should be allowed to litigate the issues decided in the state court action once again. This is an impermissible use of the bankruptcy process. *Little Creek*, 779 F.2d at 1074; *Ravick*, 106 B.R. at 844–46. The reason supplied by the lower court for allowing Rosemary Brown to abuse the bankruptcy process is nothing short of astonishing: The court refused to dismiss this petition so that it might review the decision of the state superior court judge granting summary judgment. *In re: Wally Findlay Galleries (New York), Inc.*, 36 B.R. 849, 851 (Bankr.S.D.N.Y.1984), is instructive in this regard:

> It is clear that the debtor did not file its petition to reorganize, but rather as a litigating tactic in its dispute with [its creditors]. The petition was filed the same day that judgments on the promissory notes were entered in the state court. *See In re Ripples of Clearview, Inc.*, 26 B.R. 453, 455 (Bankr.E.D.N.Y. 1983).... [T]he debtor ... [lacks] sufficient assets to post a bond in order to stay these judgments pending appeal. The debtor filed its petition herein to avoid the consequences of adverse state court decisions while it continues litigating. This court should not, and will not, act as a substitute for a supersedeas bond of state court proceedings.
>
> The debtor also seeks to use this court as an appellate forum to review the state court's grant of summary judgment on the notes in the context of a lease assumption.... It is not this court's func-

tion to review a state court grant of summary judgment.

*Id.*

The bankruptcy court exceeded its authority when it permitted the case to continue so that it might serve as an appellate forum.

In conclusion, the bankruptcy court erred as a matter of law when it determined that an individual not engaged in business could file a petition for relief under chapter 11 of the Bankruptcy Code. Further, the implicit finding of the lower court that Rosemary Brown had a reasonable likelihood of successful rehabilitation was clearly erroneous. The finding of the bankruptcy court that the debtor did not file in subjective bad faith was also clearly erroneous. For all of these reasons, the decision of the bankruptcy court is reversed and this case is remanded with instructions to dismiss the petition of Rosemary Brown. No costs.